UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KAREEM JAMAR DURHAM,<br>*Plaintiff*, | : <br> : <br> : | |
| v. | : <br> : | No. 3:19-cv-190 (KAD) |
| WARDEN JANE DOE, et al.<br>*Defendants*. | : <br> : | February 19, 2019 |

## INITIAL REVIEW ORDER

On February 7, 2019, the Plaintiff, Kareem Jamar Durham, a prisoner currently confined at the Bridgeport Correctional Center ("BCC") in Connecticut, brought a civil action *pro se* under 42 U.S.C. § 1983 against multiple Connecticut Department of Correction ("DOC") officials in their individual and official capacities: Warden Amonda Hannah,[1] Lieutenant Durant, Officer Tardiff, Officer Saas, Frank Doe, Dr. Tung, Officer Callands, and an unspecified number of medical officials at BCC. Compl. (DE#1). The Plaintiff is suing the Defendants for violating his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his safety and/or medical needs. *Id.* at ¶ 9. He is also raising claims of negligence and violations of administrative regulations. *See id.* at ¶¶ 9-10. The Plaintiff seeks damages and injunctive relief in the form of a transfer to another facility where he can receive adequate mental health treatment. *Id.* at p.5. On February 11, 2019, Magistrate Judge William I. Garfinkel granted the Plaintiff's motion to proceed *in forma pauperis*. *See* Order No. 7. For the following reasons, his complaint is dismissed in part.

---

[1] The Plaintiff lists the first defendant as "Warden Jane Doe." The Court takes judicial notice from the DOC website that the warden at BCC is Amonda Hannah.

**Standard of Review**

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a Defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the Defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**Allegations**

On January 2, 2019, at approximately 7:23 p.m., the Plaintiff was in the dayroom of Unit 38B-6 for his recreation period. Compl. ¶ 1. There, he became involved in a verbal altercation with another inmate named Frank Chimble. *Id.* Chimble threatened and hurled racial insults at the Plaintiff. *Id.* After the altercation, the Plaintiff was placed in administrative detention. *Id.*

On January 9, the Plaintiff was sent back to Unit 38B-6. Compl. ¶ 1. When he arrived, Chimble and other inmates started insulting and yelling at him through the doors,

stating that they "were going to kill [him] when they catch [him]." *Id.* While the Plaintiff was in his cell, the inmate in the adjacent cell squirted urine under his door. *Id.* The harassment caused the Plaintiff to have suicidal thoughts and fear for his life. *Id.* That afternoon, he spoke with a correction official and told him that he wanted to refuse housing because he feared for his safety. *Id.* Afterward, he was placed in administrative detention. *Id.*

A couple of days later, while in administrative detention, Lieutenant Durant, Officer Tardiff, and Officer Saas called the Plaintiff to the counselor's office. Compl. ¶ 2. There, the Plaintiff explained that he feared for his life and "begged" the officials for help. *Id.* He also explained that the other inmates in Unit 38B-6 had been harassing him and causing him to develop suicidal thoughts. *Id.* However, the Defendants told him that he could either continue to refuse housing and receive disciplinary reports or go back to his housing unit and "deal with the bull." *Id.* The Plaintiff remained in administrative detention, and his suicidal thoughts became more severe. *Id.*

On January 16, at approximately 9:07 a.m., the Plaintiff was informed that he was being transferred back to Unit 38B-6. Compl. ¶ 3. He told the official on duty that he feared for his safety and refused the housing assignment. *Id.* As a result, the Plaintiff received a Class A disciplinary report. *Id.* Later that evening, he spoke with Frank Doe in the mental health unit and told him that he was "feeling like committing suicide" because he was not receiving any assistance from BCC supervisors. *Id.* Afterward, he was placed on behavioral observation status ("BOS") in the mental health unit. *Id.*

While on BOS, the Plaintiff informed Frank Doe and Dr. Tung that his mental health was poor and that he would rather die before going back to Unit 38B-6, but none

of the correction officials were taking him seriously. Compl. ¶¶ 3-4. He submitted several written requests indicating that he would commit suicide if officials sent him back to his housing unit. *Id.* at ¶ 4. Doe and Tung eventually stopped meeting with the Plaintiff, which caused his PTSD, anxiety, and depression to increase. *Id.* The Plaintiff began having nightmares about being killed in Unit 38B-6. *Id.* He wrote multiple letters to Warden Hannah, his captain, and the deputy warden, but he did not receive any responses. *Id.*

On January 29, the Plaintiff was informed that he was being transferred back to administrative detention, which caused him to panic. Compl. ¶ 5. At approximately 12:30 a.m. on January 31, the Plaintiff attempted suicide after realizing that he was being forced to choose between being punished for refusing housing or fearing for his safety. *Id.* He stopped Officer Callands and told him that he had ingested ten sleeping pills and was about to take six more pills. *Id.* at ¶ 6. The Plaintiff then took the pills and drank a bottle of deodorant in Callands' presence. *Id.* Callands did not immediately call a code, but he did make a phone call. *Id.* Five minutes later, the Plaintiff passed out after he no longer could endure his stomach pains. *Id.* Sometime between 1:00 p.m. and 1:15 p.m., he felt officers lift him off the floor. *Id.* He remembers Callands tapping on his door approximately fifteen minutes before the other officers arrived. *Id.*

The next day, the Plaintiff woke up and was unable to eat because of his stomach pains. Compl. ¶ 7. He believes that he should have been taken to a hospital. *Id.* The Plaintiff continues to experience suicidal thoughts while confined at BCC. *Id.* at ¶ 8.

**Discussion**

The Plaintiff claims that the Defendants violated his Eighth Amendment protection against cruel and unusual punishment by acting with deliberate indifference to his safety and/or medical needs. Compl. ¶ 9. He is also suing the Defendants for negligence and for violating a number of DOC regulations. *Id.*

To state a deliberate indifference to health or safety claim under the Eighth Amendment, an inmate must demonstrate both that "he [was] incarcerated under conditions [that] pos[ed] a substantial risk of serious harm" and that prison officials possessed culpable intent, that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

There is a subjective and an objective component to the deliberate indifference standard. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006). Objectively, the inmate must allege that the deprivation was "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). A "sufficiently serious" deprivation exists if the inmate suffers from an urgent and degenerative medical condition capable of causing death or extreme chronic pain, is otherwise being denied minimal life necessities, or is subject to a known risk of injury at the hands of others. *See Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (citation omitted); *Awad v. Moskites,* No. 3:18-CV-1167 (JAM), 2019 WL 109336, at *4 (D. Conn. Jan. 4, 2019) (prisoner stated plausible Eighth Amendment claim based on allegation that official failed to act after becoming aware of direct threat to prisoner's safety); *Anderson v. Quiros,* No. 3:18-CV-1107 (MPS), 2018 WL 3677901, at *3 (D. Conn. Aug. 2, 2018) (to state Eighth Amendment claim, prisoner must allege facts

5

showing that he was incarcerated under conditions posing substantial risk of serious harm). Subjectively, the inmate must allege that the prison official "act[ed] with a sufficiently culpable state of mind." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations and internal quotations omitted). In this regard, the official must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his actions or inactions, and nonetheless disregarded that risk. *See Salahuddin*, 467 F.3d at 279-80.

Construing the allegations liberally, the Plaintiff has stated a plausible Eighth Amendment claim against Durant, Tardiff, Saas, Frank Doe, and Dr. Tung for ignoring and/or dismissing his complaints about the danger of placing him in his housing unit. He alleges that he informed each of them verbally that other inmates in the unit had threatened and harassed him, which caused him to fear for his physical safety. He also told them that his fear was causing him to develop suicidal thoughts. The Plaintiff has also stated a plausible Eighth Amendment claim against Callands who, according to the Plaintiff, did not immediately render assistance after witnessing the Plaintiff attempt suicide. Therefore, the Eighth Amendment claim may proceed against these Defendants in their individual capacities for damages and in their official capacities for injunctive relief.[2]

The Plaintiff has not, however, stated a plausible claim against Warden Hannah or the unidentified medical officials at BCC because he has not alleged sufficient facts showing their personal involvement in the constitutional deprivation. "It is well settled in

---

[2] The Eleventh Amendment bars claims for damages against state officials in their official capacity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, all claims for damages against the Defendants in their official capacities are dismissed.

6

this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). The only allegation against Warden Hannah is that she did not respond to the Plaintiff's written letter about his mental health situation. This is insufficient to establish personal involvement. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (two letters sent to supervisor defendant and defendant's brief response do not demonstrate requisite personal involvement for § 1983 claim); *Lebron v. Semple*, No. 3:18-CV-1017 (JAM), 2018 WL 3733972, at *4 (D. Conn. Aug. 6, 2018) ("Courts have held that [a] failure to respond to a letter of complaint does not constitute the personal involvement necessary to maintain a section 1983 claim") (quoting *Richardson v. Department of Correction*, No. 10-CIV-6137 (SAS), 2011 WL 710617, at *3 (S.D.N.Y. Feb. 28, 2011)). Moreover, the Plaintiff has not stated any allegations showing how the John/Jane Does in the medical unit at BCC, aside from Frank Doe and Dr. Tung, were personally involved in the alleged deprivation. Therefore, the claims against Hannah and the John/Jane Doe medical officials at BCC are dismissed.

To the extent the Plaintiff seeks to raise a state law claim of negligence or medical malpractice against any of the Defendants, his claim is barred by Connecticut General Statutes §§ 4-160(b) and 4-165.[3] Finally, the claim that the Defendants violated administrative polices or directives is not independently cognizable under § 1983. *See Preterotti v. Souliere*, No. 2:16-CV-72 (WKS) (JMC), 2016 WL 7971319, at *6 (D. Vt.

---

[3] In addition, although the Court is permitting the Eighth Amendment claims to proceed against medical personnel, to be clear, allegations of mere negligence in support of those claims is not adequate and will not satisfy the Plaintiff's burden. *See, Pabon v. Wright,* No. 99-CIV-2196 (WHP), 2004 WL 628784, at *5 (S.D.N.Y. Mar. 29, 2004), *aff'd,* 459 F.3d 241 (2d Cir. 2006) (because negligent failure to provide adequate medical care does not rise to level of deliberate indifference, allegations of medical malpractice do not state claim under § 1983); *Chance,* 143 F.3d at 703 ("[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim").

7

Dec. 28, 2016); *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002).  Thus, claims based upon negligence and/or the failure to comply with administrative regulations are dismissed.

**Orders**

(1) The Eighth Amendment claim for deliberate indifference to safety and/or medical needs may proceed against Frank Doe, Durant, Tardiff, Saas, Callands, and Tung in their individual capacities for damages and in their official capacities for injunctive relief.  All other claims are dismissed.  The clerk is directed to terminate Warden Jane Doe and the John/Jane Does (medical staff) as Defendants to this action.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint, to the United States Marshal Service.  The U.S. Marshal is directed to effect service of the complaint on the Defendants in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within **thirty (30) days** from the date of this order.

(3) The Clerk is directed to mail one copy of this Order to the Plaintiff at what appears to be his new place of confinement:  Garner Correctional Institution, 50 Nunnawauk Road, Newtown, CT 06470.

(4) The Clerk shall verify the current work addresses for Defendants Frank Doe, Durant, Tardiff, Saas, Callands, and Tung with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (DE#1) to them at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing.  If

any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Frank Doe, Durant, Tardiff, Saas, Callands, and Tung shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(8) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(9) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If the Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The Plaintiff must give notice of a

new address even if he is incarcerated. The Plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

(11) The Plaintiff's motion for appointment of counsel (DE#3) is denied without prejudice. He has not shown a substantial effort to obtain counsel on his own, and the current record, which consists only of a complaint, is insufficient for this Court to determine whether the appointment of *pro bono* counsel is warranted.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 21st day of February 2019.

_____
Kari A. Dooley
United States District Judge