# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

**KAREEM JAMAR DURHAM,**

    **Plaintiff,**

**v.**                               **Case No.: 3:19cv190 (KAD)**

**WARDEN AMONDA HANNA,[1] et al.,**

    **Defendants.**

## MEMORANDUM OF DECISION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF No. 44]

Kari A. Dooley, United States District Judge

On February 7, 2019, *pro se* Plaintiff Kareem Jamar Durham, a prisoner who was formerly confined at the Bridgeport Correctional Center[2] brought this civil rights action pursuant to 42 U.S.C. § 1983 against Connecticut Department of Correction ("DOC") officials in their individual and official capacities: Warden Hannah, Lieutenant Durant, Officer Tardiff, Officer Saas, Frank Doe, Dr. Tung, Officer Callands, and an unspecified number of medical officials at Bridgeport Correctional Center. Compl. (ECF No. 1). Upon initial review, the court permitted Durham's Eighth Amendment claims for deliberate indifference to his safety and/or medical needs to proceed against Frank Mastri,[3] Lieutenant Durant, Officer Tardiff, Officer Saas, Officer Callands, and Dr. Tung ("Defendants") in their individual capacities for damages and in their official capacities for injunctive relief. Initial Review Order (ECF No. 8 at 10).

---

[1] The clerk is instructed to amend the caption to reflect the correct spelling of Warden Hannah's last name. *See* https://portal.ct.gov/DOC/Facility/Garner-CI. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (court may "take judicial notice of relevant matters of public record"); s*ee also* Fed. R. Evid. 201(b).

[2] As indicated by his last Notice of Change of Address, Durham is now confined at Corrigan-Radgowki Correctional Center ("Corrigan"). (ECF No. 46).

[3] Frank Doe was later identified as Frank Mastri. *See* Waiver, ECF No. 16.

On February 7, 2020, Defendants filed a Motion for Summary Judgment on the basis of Durham's failure to exhaust his administrative remedies. (ECF No. 44). Durham's opposition to the motion for summary judgment was due by February 28, 2020. Durham did not file a timely opposition (or any opposition to date). Nor has he sought an extension of time within which to do so. For the following reasons, the Motion for Summary Judgment is GRANTED.

### STANDARD OF REVIEW

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense...." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation but must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted).

To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**FACTS**

The following factual background is taken from Durham's allegations[4] and Defendants' Local Rule 56(a)1 Statement and its supporting exhibits, including the affidavits of Grievance Coordinator Michaela McCarthy and Medical Grievance Coordinator Nicole Sullivan.[5] (ECF No. 44-5) ("Defs.' Rule 56(a) Stmmt.).

At the time relevant to this action, Durham was an inmate incarcerated at Bridgeport Correctional Center. Defs.' Rule 56(a) Stmmt. at ¶ 1 Durham alleges he was placed in administrative detention after he had a verbal altercation with another inmate in the dayroom of Unit 38B-6. Initial Review Order (ECF No. 8 at 2). He alleges that on January 9, 2019, he was returned to Unit 38B-6, where he was harassed and threatened by other inmates; and he was then placed back in administrative detention after he informed a correctional officer that he wanted to refuse housing. *Id.* at 2-3. A couple of days later, Durham alleges he spoke to Lieutenant Durant, Officer Tardiff and Officer Saas about his fear for his life and begged for help. *Id.* at 3. He allegedly explained that the other inmates in Unit 38B-6 had been harassing him and causing him to develop suicidal thoughts. *Id.* However, the Defendants allegedly told him he could continue

---

[4] In referring to Durham's allegations, the court cites to its Initial Review Order (ECF No. 8), which provides a detailed recitation of Durham's allegations.

[5] Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Defendants informed Durham of this requirement in their Notice to *Pro Se* Litigant. (ECF No. 44-6). Because Durham has not filed a response to Defendants' statement of facts in compliance with Local Rule 56(a)2, Defendants' Rule 56(a)1 statement of facts are deemed admitted where supported by the evidence.

to refuse housing and receive disciplinary reports or go back to his housing unit and "deal with the bull." *Id.* Durham alleges he remained in administrative detention, and his suicidal thoughts became more severe. *Id.*

On January 16, 2019, after Durham was informed that he would be transferred back to Unit 38B-6. He alleges that he told the official on duty he feared for his safety and he refused the housing assignment. *Id.* He alleges he informed Frank Mastri in the mental health unit that he was "feeling like committing suicide," and he was thereafter placed on behavioral observation status in the mental health unit, where he informed Mastri and Dr. Tung that he would rather die than be housed with the inmates who harassed and threatened him. Durham alleges that none of the correction officials were taking him seriously. *Id.* 3-4. Mastri and Dr. Tung allegedly later stopped meeting with Durham, which he alleges, caused him to suffer from increased PTSD, anxiety, and depression. *Id.* at 4.

On January 29, 2019, Durham was allegedly informed that he was being transferred back to administrative detention, which caused him to panic. *Id.* On January 31, 2019, Durham alleges he attempted suicide by taking ten sleeping pills and drinking a bottle of deodorant in Officer Callands' presence. He alleges that Officer Callands did not call a code, although he did make a phone call after which Durham recalls officers lifting him off the floor. *Id.* at 4.

As indicated above, on initial review, the court determined that Durham had stated plausible Eighth Amendment claims based on deliberate indifference to his safety and/or medical needs against Bridgeport Correctional Center employees, Frank Mastri (who worked in the mental health unit), Lieutenant Durant, Officer Tardiff, Officer Saas, and Dr. Tung. *Id.* at 3, 6. The court also determined that Durham had stated a plausible Eighth Amendment claim against Officer Callands arising out of the alleged suicide attempt on January 31, 2019. *Id.* at 4, 6.

**DISCUSSION**

The Prison Litigation Reform Act of 1996 ("PRLA"), which governs actions brought by prison inmates, requires prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[6] 42 U.S.C. 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA; *Jones v. Bock*, 549 U.S. 199, 217 (2007); and a defendant bears the burden of proving that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available

---

[6] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

in practice even if it is "officially on the books." *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his complaint; a plaintiff must exhaust his administrative remedies prior to filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-CV-903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).

Exhaustion of Administrative Remedies Under Administrative Directive 8.9

DOC Administrative Directive 8.9 (entitled Administrative Remedy for Health Services). provides for two types of "Health Services Review": (1) Diagnosis and treatment, which includes a review of a decision not to provide treatment; and (2) Review of an Administrative Issue,

which addresses concerns of "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9(9).

Pursuant to Section 10 of Administrative Directive 8.9, both types of grievances require an inmate to seek informal resolution of "the issue face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." 8.9(10). According to Section 10, a response to the inmate request should be provided within fifteen calendar days from receipt of a written request. *Id.*

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." A.D. 8.9(11). The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. *Id.* Upon receipt of CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider. A.D. 8.9(11)(A). "If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the health services review." *Id.* "The physician shall notify the inmate of the decision, in writing, within ten business days by indicating 'No Further Action' in the disposition field of CN 9602, Inmate Administrative Remedy Form." *Id.* "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the [URC] for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]" A.D. 8.9(11)(B).

RN Nicole Sullivan, the coordinator for medical grievances filed under Administrative Directive 8.9, states in her Affidavit that Administrative Directive 8.9 provides the administrative procedure for an inmate seeking administrative review of his medical care.

Sullivan Aff. (ECF No. 44-4 at ¶ 3). She further avers that she conducted a diligent search of records maintained at Bridgeport Correctional Center for any medical grievances filed by Durham from January 1, 2019 through February 28, 2019. *Id.* at ¶¶ 2-5. She did not locate any such grievances and so concluded that Durham did not filed any medical grievances during that time period. *Id.* at ¶ 6.

Administrative Remedies Under Administrative Directive 9.6

Administrative Directive 9.6 "provide[s] a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority[.]" A.D. 9.6(1). Administrative Directive 9.6(6) requires an aggrieved inmate to first seek informal resolution prior to filing a grievance. A.D. 9.6(6)(A). It provides that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." *Id.* Administrative Directive 9.6(6)(C) specifically states that the inmate must include a copy of the Inmate Request Form (CN 9601) with the grievance (CN 9602) or an inmate must explain its absence.

The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance and should include a copy of the response to the written request to resolve the matter informally or explain why the response is not attached. A.D. 9.6(6)(C). The Unit Administrator shall respond in writing to the Level 1 Grievance within thirty business days of his or her receipt of the Grievance. *See* A.D. 9.6(6)(I). The inmate may appeal the disposition of the Level 1 Grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. A.D. 9.6(6)(G), (I) & (K). A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed. *See* A.D.

9.6(6)(G).

A Level 2 Appeal of a disposition of a Level 1 Grievance must be filed within five calendar days from the inmate's receipt of the decision on the Level 1 Grievance. *See* A.D. 9.6(6)(K). The Level 2 Appeal of the Unit Administrator's failure to dispose of the Level 1 Grievance in a timely manner must be filed within 65 days from the date the Level 1 Grievance was filed by the inmate. *See* A.D. 9.6(6)(M).

Level 2 Appeals of inmates confined in Connecticut correctional facilities are reviewed by the appropriate District Administrator. A.D. 9.6(6)(K). The District Administrator is required to respond to the Level 2 Appeal within thirty business days of receipt of the appeal. *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 Appeals to which there has been an untimely response by the District Administrator. A.D. 9.6(6)(L). A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal. *See id.* A Level 3 Appeal of the District Administrator's failure to dispose of the Level 2 Appeal in a timely manner must be filed within 35 days of the filing of the Level 2 appeal. A.D. 9.6(6)(M). A Level 3 Appeal is reviewed by the Commissioner of Correction or his or her designee. A.D. 9.6(6)(L).

Michaela McCarthy serves as the Administrative Remedies Coordinator and Keeper of Records for inmate administrative remedies at Bridgeport Correctional Center. McCarthy Aff. (ECF No. 44-3 at ¶ 3). In her Affidavit, she states that DOC Administrative Directive 9.6 outlines the relevant administrative remedy procedure for grievance filing. *Id.* at ¶ 4. She researched the grievances filed by Durham pertaining to the time frame following the incident on January 2, 2019. *Id.* at ¶ 7. Her search revealed that Durham had "tried to file one grievance during the pertinent time period." *Id.* at ¶ 8. This grievance (filed on January 15, 2019)

concerned Durham's request to Officer Callands to remove the trash can from off of the top of the food cart. *Id.* at ¶ 8, p. 6. Durham's grievance filed on January 15, 2019 was returned without disposition because he had failed to attempt an informal resolution prior to filing his grievance. *Id.* at ¶ 8, p. 4. Her search did not return any grievance appeal or any further documents filed by Durham after his January 15, 2019 grievance was returned. *Id.* at ¶ 9.

<u>Durham's Failure to Exhaust</u>

Prior to filing this action on February 7, 2019, Durham was obligated to exhaust his administrative remedies under Administrative Directive 8.9 with respect to his claims against Mastri and Dr. Tung; and under Administrative Directive 9.6 with respect to his claims against custody staff Lieutenant Durant, Officer Tardiff, Officer Saas, and Officer Callands. *See Wilson v. McKenna*, 661 F. App'x 750, 753 (2d Cir. 2016) (summary order) (affirming district court's dismissal based on inmate's failure to exhaust his claim against correction officer for deliberate indifference to medical needs under Administrative Directive 9.6); *Cosby v. Tawana*, No. 3:19-CV-401 (MPS), 2020 WL 4284561, at *4 (D. Conn. July 27, 2020) (plaintiff's claims of deliberate indifference to medical needs by custody staff is subject to exhaustion under Administrative Directive 9.6). To the extent he also alleges a claim of deliberate indifference to his safety against Mastri and Dr. Tung based on their disregard of his complaints about the dangers of his housing unit, Durham was required to exhaust his administrative remedies under Administrative Directive 9.6.

Relevant to Durham's Eighth Amendment claims of deliberate indifference to his mental health needs against Mastri and Dr. Tung, RN Sullivan averred that she did not locate any Health Services Reviews or "medical grievances" filed between January 1, 2019 and February 28, 2019. (ECF No 44-4 at ¶¶ 5, 6). Accordingly, these Defendants have met their initial burden of

establishing that Durham failed to exhaust his administrative remedies and they are entitled to judgment as a matter of law. Durham did not file any opposition to the motion for summary judgment, and the evidence raises no inference that his remedies under Administrative 8.9 were unavailable so as to excuse his non-exhaustion. Accordingly, Defendants' motion for summary judgment on Durham's Eighth Amendment claim of deliberate indifference to his mental health needs against Mastri and Dr. Tung is GRANTED. *See Groomes v. Frazir*, No. 3:17CV1072(JCH), 2018 WL 6519062, at *3 (D. Conn. Dec. 11, 2018) (granting summary judgment on ground that plaintiff had not exhausted his available administrative remedies prior to filing his action).

Administrative Remedies Coordinator McCarthy also avers that her research into whether Durham filed any grievances pursuant to Administrative Directive 9.6 within the "pertinent time period" revealed only his improperly-filed grievance which was unrelated to his claims in this action. ECF No. 44-3 at ¶¶ 8-9. As a Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the Grievance, McCarthy's search for Durham's grievance filing during "pertinent period" covered at least the time from January 2 through February 28, 2019 (which is thirty days from January 29, 2019, the date of the latest incident relevant to this action known to McCarthy).[7] (ECF No. 44-3 at ¶ 6); s*ee* A.D. 9.6(6)(C). Thus, McCarthy's affidavit establishes that Durham failed to exhaust his administrative remedies available under Administrative Directive 9.6 prior to filing this action on February 7, 2019. The evidence raises no inference that Durham's remedies under Administrative Directive 9.6 were unavailable so as to excuse the exhaustion requirement. Accordingly, the motion for summary

---

[7] The court notes that the latest incident giving rise to Durham's claims occurred on January 31, 2019, when Officer Callands allegedly acted with deliberate indifference to Durham's need for medical attention after he attempted suicide. Insofar as Durham filed this complaint only days later on February 7, 2019, the fact that McCarthy did not search for grievances through March 2, 2019 is of no moment.

judgment as to Durham's Eighth Amendment deliberate indifference to his health and safety claims against Lieutenant Durant, Officer Tardiff, Officer Saas, and Officer Callands, and his Eighth Amendment deliberate indifference to his safety claims against Mastri and Dr. Tung is GRANTED.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [ECF No. 44] is GRANTED in its entirety. The Clerk of the Court is instructed to enter judgment in favor of the Defendants and to close this case.

**SO ORDERED** this 7th day of August, 2020 at Bridgeport, Connecticut.

\_\_\_/s/_____
Kari A. Dooley
United States District Judge